1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                    AT SEATTLE

8    KEVIN JOE BRUNSON,

9                        Plaintiff,              Case No. C18-0030-MJP-MAT

10           v.

11   OFFICER L. VERHELST,  *et al.*,             REPORT AND RECOMMENDATION

12                        Defendants.

13

14             INTRODUCTION AND SUMMARY CONCLUSION

15           Plaintiff Kevin Brunson is a former inmate at the King County Correctional Facility in

16   Seattle, Washington.  He has filed a civil rights complaint under 42 U.S.C. § 1983 in which he

17   alleges that his constitutional rights were violated when jail staff improperly rejected his mail and

18   failed to provide an adequate opportunity to appeal the rejections.  Plaintiff identified the King

19   County Jail, Officer L. Verhelst, and Andrea Williams as defendants in his complaint.  However,

20   as the Court explained in its Order Directing Service of plaintiff's complaint, the Court does not

21   recognize the King County Jail as a defendant in this action (*see* Dkt. 7 at 1-2 n.1) and, thus, this

22   action is proceeding only against defendants Verhelst and Williams.

23           Defendants now move for summary judgment.  Plaintiff has been advised of the summary

REPORT AND RECOMMENDATION - 1

judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), but has filed no response to defendants' motion.  The Court, having reviewed defendants' motion, and the balance of the record, concludes that defendants' motion for summary judgment should be granted, and that plaintiff's complaint and this action should be dismissed with prejudice.

FACTS

This action arises out of what plaintiff maintains were repeated, improper rejections of mail sent to him while he was confined in the King County Correctional Facility (KCCF) in 2017. Though plaintiff references in his pleading numerous rejections, the primary focus of his complaint appears to be two pieces of mail which were rejected in December 2017.[1]  (Dkt. 6 at 3.)  One of those pieces of mail was sent from the North Bend Public Library, and the other was sent from the Renton Public Library.  (*See* Dkt. 16, ¶ 5 and Ex. A.)

Mailroom officers at KCCF review all incoming inmate mail using an "Inmate Mail Disposition" form.  (*Id*., ¶ 6.)  The form contains a list of prohibited items and, if a given piece of mail contains one or more of the prohibited items, the officer checks the appropriate box(es) on the form and the mail is rejected.  (*Id*., ¶ 7.)  The inmate to whom the mail was directed is provided a copy of the form showing that mail was rejected and noting the reasons for the rejection.  (*See id*. and Ex. A.)  The inmate may grieve the mail rejection decision.  (*Id*., ¶ 7.)  The mail is thereafter disposed of in one of several ways – it may be returned to the sender, placed in inmate property, placed into evidence, destroyed, etc.  (*See id*.)

---

[1]  Plaintiff attached to his complaint a copy of an inmate grievance complaining about the December mail rejections which appear to be at issue here.  Plaintiff does not provide any specific details about the other referenced rejections, and it is unclear whether the two defendants named in this action had any involvement in those rejections. It is also unclear whether plaintiff properly exhausted his administrative remedies with respect to any of the other referenced mail rejections.

REPORT AND RECOMMENDATION - 2

On December 19, 2017, Officer Verhelst rejected the two pieces of mail sent to plaintiff from the North Bend Public Library and the Renton Public Library. (Dkt. 16, ¶ 8 and Ex. A.)  The incoming mail from the North Bend Public Library was rejected because (1) it was on colored paper, (2) it contained copyrighted works, (3) it contained stickers, and (4) it contained staples. (*See id*.)  The incoming mail from the Renton Public Library was rejected because (1) it was on colored paper, (2) it contained copyrighted works, and (3) it contained staples.  (*See id*.)  Officer Verhelst completed an Inmate Mail Disposition form for each piece of rejected mail, copies of which were apparently provided to plaintiff.  (*See id*. and Exs. A, B.)

Plaintiff grieved the mail rejection, and the grievance was denied on the ground that Officer Verhelst had followed standard mailroom procedures in rejecting the items.  (*See id*., ¶ 10 and Ex. B.)  Plaintiff thereafter submitted a grievance appeal which was denied by Andrea Williams, the Record and Information Systems Manager at KCCF.  (*Id*., ¶ 1 and Ex. B.)

With respect to the various restrictions noted on the Inmate Mail Disposition forms relevant to this action, Ms. Williams explains that the restrictions on staples and stickers are necessary as such items can be fashioned into "shivs" or similar weapons, and the restrictions on photocopies of copyrighted materials are intended to avoid violating copyright laws.  (*Id*., ¶ 9.)  Ms. Williams also explains that the restrictions on colored paper, and other similar items, were implemented in mid-2017 in an effort to address an increase in drug smuggling activities at both the KCCF and the Regional Justice Center (RJC) facility in Kent, Washington.  (*See id*., ¶¶ 2, 4.)  The mail room staff at both facilities had noticed an increase in efforts to smuggle drugs into the facilities through the mail.  (*Id*., ¶ 2.)

The primary drug detected by jail staff was Suboxone, a drug which is used to treat opiate addiction.  (*Id*.)  That drug, and others, can be mixed with colored pencils and crayons, crushed

REPORT AND RECOMMENDATION - 3

into a paste, and spread across paper in a way that looks like artwork. (Dkt. 16, ¶ 3.) Mailroom staff found the drug in colored envelopes, greeting cards and glue used on the cards. (*Id*.) Following implementation of the new mail restrictions, attempts to smuggle Suboxone into the two King County jail facilities had decreased significantly. (*Id*., ¶ 4.)

In January 2018, Ms. Williams modified the KCCF mail policy somewhat to allow additional items including photographs printed on white computer paper, letters written in colored ink, and excerpts of copyrighted material, unless the specific characteristics of an individual item raised concerns with the mailroom staff. (*Id*., ¶ 11.)

Plaintiff asserts in his complaint that jail staff "unconstitutionally blocked delivery" of the two pieces of mail sent to him by the North Bend and Renton libraries. (Dkt. 6 at 3.) Plaintiff claims that the mail contained "court website material" which was downloaded from the internet and should not have been excluded under the restriction on copyrighted works. (*See id*.) He also complains that though jail policies prohibit colored paper, his mail was "color pixel downloaded from the internet" and should not have been excluded pursuant to the restriction on colored paper. (*Id*.) Finally, plaintiff complains that jail staff denied him due process by failing to provide him an adequate opportunity "to appeal censorship decisions." (*Id*.) Plaintiff seeks relief in the form of an injunction to preclude defendants from withholding his mail. (*See id*. at 4.) Plaintiff does not request damages. (*See id*.)

## DISCUSSION

1.   Summary Judgment Standard

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails

REPORT AND RECOMMENDATION - 4

to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

REPORT AND RECOMMENDATION - 5

"The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

    2.    <u>Section 1983 Standard</u>

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

    3.    <u>Claims for Injunctive Relief</u>

Defendants go to some length to explain why plaintiff's claims for injunctive relief fail. As to any intended claims for injunctive relief against defendants Verhelst and Williams in their official capacities, defendants argue the claims must be dismissed because such claims are properly treated as claims against King County, and plaintiff fails to allege any deprivation due to an official County custom or policy. (Dkt. 14 at 6.) Defendants go on to argue that the Court should find that plaintiff cannot seek injunctive relief against defendants Verhelst and Williams in their individual capacities based on some competing case law out of other jurisdictions. (*See id*. at 6-7.) Finally, defendants argue that even if plaintiff could proceed with his claims for prospective

REPORT AND RECOMMENDATION - 6

1   injunctive relief against defendants in their individual capacities, he cannot prevail on those claims

2   because he cannot show a constitutional violation and he cannot demonstrate that he is likely to be

3   subject to any future violations.

4         What defendants do not specifically argue, but which appears to be dispositive of plaintiff's

5   claims for injunctive relief, is the fact that plaintiff is no longer in King County custody, having

6   been transferred into the custody of the Washington Department of Corrections during the

7   pendency of this case.  (*See* Dkt. 13.)  Since plaintiff has been transferred from King County

8   custody where the alleged violations occurred, any claims for injunctive relief relating to

9   conditions at the King County Jail are presumably moot.  *See Nelson v. Heiss*, 271 F.3d 891, 897

10  (9th Cir. 2001); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991).  And, given that plaintiff

11  asserts no claim for damages in this action, the entirety of this action is subject to dismissal.

12        4.    <u>Constitutional Claims</u>

13        Even assuming plaintiff's claims or injunctive relief are not moot, plaintiff has not

14  established any violation of a constitutional right.  Plaintiff's claim that his mail was rejected

15  implicates First Amendment concerns as prisoners have a First Amendment right to send and

16  receive mail.  *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  However, a prison

17  may adopt regulations which impinge on an inmate's constitutional rights if the regulations are

18  "reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

19  Legitimate penological interests include "security, order, and rehabilitation."  *Procunier v.*

20  *Martienz*, 416 U.S. 396, 413 (1974).  A reviewing court "must accord substantial deference to the

21  professional judgment of prison administrators, who bear a significant responsibility for defining

22  the legitimate goals of a corrections system and for determining the most appropriate means to

23  accomplish them."  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).  The burden is not on the state

REPORT AND RECOMMENDATION - 7

1    to prove the validity of a challenged regulation, but is instead on the inmate to disprove it. *Id*.

2    Defendants maintain that the regulations pursuant to which plaintiff's mail was rejected

3    are intended to prevent introduction into the facility of drugs, materials which could be fashioned

4    into "shivs" or similar weapons, and materials which may violate copyright laws. (*See* Dkt. 16, ¶

5    9.) Such restrictions all appear to relate to the legitimate penological objectives of maintaining

6    institutional safety and security. Plaintiff offers no evidence to the contrary and, thus, his First

7    Amendment claim fails.

8    Plaintiff also asserts that defendants violated his due process rights by failing to provide an

9    adequate opportunity to appeal mail rejection decisions. However, the record demonstrates that

10   petitioner received notice of the mail rejection and that he was able to challenge the mail rejection

11   through the institutional grievance process, which included an opportunity to appeal the initial

12   grievance decision. (*See id*., Exs. A, B.) Plaintiff fails to make clear what more process he believes

13   he was due in this regard. Plaintiff's due process claim is vague and conclusory and provides no

14   basis for relief in this civil rights action.

15                                    CONCLUSION

16   Based on the foregoing, this Court recommends that defendants' motion for summary

17   judgment be granted, and that plaintiff's complaint and this action be dismissed with prejudice. A

18   proposed order accompanies this Report and Recommendation.

19                                    OBJECTIONS

20   Objections to this Report and Recommendation, if any, should be filed with the Clerk

21   within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.

22   Failure to file objections within the specified time may affect the right to appeal. Objections should

23   be noted for consideration on the District Judge's motions calendar for the third Friday after they

REPORT AND RECOMMENDATION - 8

are filed.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 16, 2018**.

DATED this 23rd day of October, 2018.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9